No. 96-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO,
LOCAL 1638,

      Defendant and Appellant,

  v.

THE MONTANA POWER COMPANY,

      Plaintiff and Respondent.

FILED

DEC 09 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable John W. Whelen, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Thomas J. Joyce, Hennessey, Joyce & Wing, Butte,
          Montana; Walter C. Brauer, III, Brauer, Buescher,
          Valentine, Goldhammer & Kelman, Denver, Colorado

      For Respondent:

         W. Wayne Harper, Butte, Montana

Submitted on Briefs:  September 5, 1996

Decided:  December 9, 1996

Filed:

_____
           Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

The Montana Power Company (MPC) filed a complaint in the Second Judicial District Court, Silver Bow County, seeking an alternative writ of prohibition to prevent the conduct of a labor arbitration between itself and the International Brotherhood of Electrical Workers (the Union) arising from a grievance pursued by the Union on behalf of one of its members. The District Court initially granted the alternative writ of prohibition, and in a subsequent order both denied the Union's motion to dismiss the writ and made the writ permanent. The Union appeals from the District Court's order.

We reverse.

The dispositive issue in this case is whether the District Court had jurisdiction to issue the writ of prohibition.

## FACTS

The relevant facts here are undisputed. Mr. William Morrison was employed by MPC in 1995. MPC is and was in 1995 an employer engaged in interstate commerce as defined by and covered by the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 141 *et seq.* (1994). The Union is a labor organization that represents MPC employees pursuant to LMRA. MPC and the Union are parties to a collective bargaining agreement concerning grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work. The collective bargaining agreement provides for a grievance arbitration procedure to resolve disputes regarding the terms of the collective bargaining agreement.

2

On June 16, 1995, Mr. Morrison was transferred from a work crew which worked 12-hour rotating shifts to a crew working 10-hour day shifts. Mr. Morrison brought this transfer to the attention of the Union, which then filed a grievance on his behalf challenging the transfer as a violation of the collective bargaining agreement. The grievance was processed in accord with the collective bargaining agreement.

When it became clear that the Union and MPC could not resolve the grievance, the Union demanded arbitration. The Union and MPC chose Mr. Bill Corbett, a professor at the University of Montana School of Law, as arbitrator and selected March 8, 1996 as the hearing date for the arbitration.

Meanwhile, MPC, attempting to reduce its work force at Colstrip, Montana, posted an enhanced severance benefit plan (Plan) at that site. Mr. Morrison read the posting and approached MPC about taking advantage of the Plan. On February 5, 1996, Mr. Morrison and MPC reached an agreement concerning the Plan, which included a release by Mr. Morrison of "grievances" against MPC; the "grievances" referred to in the Plan were not specifically identified as grievances under the collective bargaining agreement. The Union was not a party to the Plan.

On March 1, 1996, MPC filed a motion for summary judgment with the arbitrator. On March 4, 1996, counsel for the Union left a message with MPC's counsel stating that the Union's position was that the grievance filed on Mr. Morrison's behalf "belonged to" the Union as a representative of all MPC employees and that this

3

grievance required an interpretation of the collective bargaining agreement, which affected individuals beyond Mr. Morrison. On March 6, 1996, the attorneys had a telephone conversation in which they explained their clients' respective positions; MPC's counsel stated that MPC was considering going to court to enjoin the arbitration.

On March 7, 1996, MPC filed a complaint seeking an alternative writ of prohibition, and went to court the same day to obtain the requested injunctive relief. The District Court granted the writ of prohibition, and set the matter for a show cause hearing on March 18, 1996.

On March 15, 1996, the Union filed its answer to MPC's complaint and moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. After the hearing, after the filing of post-hearing briefs, the court issued an order which denied the Union's motion to dismiss and which made permanent the initial writ of prohibition. The Union appeals.

## DISCUSSION

Did the District Court lack jurisdiction to issue the writ of prohibition?

The relations between employers and labor unions is a field which is governed by federal law. Avco Corp. v. Aero Lodge No. 735 (1968), 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (interpreting LMRA § 301, 29 U.S.C. § 185). This Court stated in Miller v. County of Glacier (1993), 257 Mont. 422, 851 P.2d 401:

4

*Collective bargaining agreements must be interpreted by application of federal law, not state law.* Teamsters Union v. Lucas Flour Co. (1962), 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. This is known as federal preemption under § 301 of the Labor Management Relations Act of 1947 (LMRA): Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 61 Stat. 156, 29 U.S.C. § 185(a) (1988). See also Foster v. Albertsons, Inc. (1992), 254 Mont. 117, 835 P.2d 720. *The United States Supreme Court has interpreted § 301 as a congressional mandate to develop a unified federal common law to address labor contract disputes.* [citation omitted.]

Miller, 851 P.2d at 403 (emphasis added). The "unified federal common law" to which we referred in Miller provides that arbitrators, not the courts, should initially attempt to resolve disputes concerning the interpretation of collective bargaining agreements. *See* United Steelworkers of America v. American Mfg. Co. (1960), 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Enterprise Wheel & Car Corp. (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; United Steelworkers of America v. Warrior & Gulf Navigation Co. (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (collectively known as the "Steelworkers Trilogy"); *see also* Republic Steel Corp. v. Maddox (1965), 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580.

While MPC recognizes the applicability of the foregoing principles in the appropriate circumstances, it argues that these circumstances are not present here. MPC contends that the issue here is simply whether the District Court properly resolved the

5

contractual matter between MPC and Mr. Morrison. MPC asserts that a Montana district court can appropriately exercise jurisdiction over a private contract issue, a matter of state law wholly distinct from federal labor law.

The Union, on the other hand, argues that interpretation of the Plan is incidental to and a necessary part of a full interpretation of the collective bargaining agreement, and therefore both interpretations are exclusively within the jurisdiction of the arbitrator; the Union contends that the arbitrator must determine whether the collective bargaining agreement permits Mr. Morrison to waive the Union's grievance through his unilateral action in accepting the Plan. The Union argues that federal common law clearly establishes that the District Court lacked jurisdiction to rule on this matter. We agree.

The Plan and the provisions of the collective bargaining agreement are not facially mutually exclusive. The collective bargaining agreement must be interpreted to determine whether the grievance brought by the Union on Mr. Morrison's behalf can be waived through a written release to which only Mr. Morrison and MPC were parties. Therefore, the Plan must be interpreted also, to determine whether, as alleged by MPC, it waives the grievance which the Union filed on Mr. Morrison's behalf. In this respect, any interpretation of the Plan by the arbitrator would not be for the purpose of determining the rights of MPC and Mr. Morrison, the parties to the contract, but would be incidental to the primary

inquiry, a determination of the overall meaning and effect of the collective bargaining agreement. In L.O. Koven & Brother, Inc. v. Local 5767, United Steelworkers of America (3rd Cir. 1967), 381 F.2d 196, the court stated:

> What remains in this case is the question of whether the effect of the release executed between an employer and a union regarding a claim governed by a collective bargaining agreement is ordinarily a matter for consideration by an arbitrator. There is scant authority on this point, but those cases touching upon this or related questions appear to view the arbitrability of release and settlement questions as obvious. [Citations omitted.] While interpreting the language of the release is not, strictly speaking, a matter of interpreting the collective bargaining contract, the process would also involve an examination of the negotiations and other events regarding the grievance which preceded execution of the release. This is a matter within the arbitrator's submission and to which he is expertly atuned [sic]. *We thus believe that unless a release explicitly discharges the parties from the collective bargaining agreement itself, or from the arbitration provisions thereof, that its effect should be determined by an arbitral forum.*

L.O. Koven, 381 F.2d at 204-05 (emphasis added). We believe the principle explained in L.O. Koven is similarly applicable here. The effect of the Plan on the collective bargaining agreement, and of the collective bargaining agreement on the Plan, should be determined by the arbitrator.

MPC does not claim that the grievance filed on Mr. Morrison's behalf is not arbitrable, according to the terms of the collective bargaining agreement; MPC claims instead that arbitrability of the grievance is precluded by the private contract entered into by MPC and Mr. Morrison. This is a procedural, rather than substantive, challenge to the arbitrability of the grievance. Once it has been determined, either by the parties or the court, that a grievance is

7

arbitrable according to the collective bargaining agreement, subsequent procedural questions are wholly within the jurisdiction of the arbitrator. *See, e.g.,* John Wiley & Sons, Inc. v. Livingston (1964), 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; International Union of Operating Engineers Local 150 v. Flair Builders, Inc. (1972), 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248. While "[a] substantive challenge to arbitrability is one where a grievance is not within the scope of the grievance and arbitration provisions of the collective bargaining agreement between the parties," Shopmen's Local 539 of International Assoc. of Bridge, Structural & Ornamental Ironworkers v. Mosher Steel Co. (11th Cir. 1986), 796 F.2d 1361, 1362, a procedural challenge is presented when the arbitrability of an indisputably arbitrable issue is impeded in some way. *See* Wiley, 376 U.S. at 558-59; Flair Builders, 406 U.S. at 491-92. In Lodge 862, International Association of Machinists and Aerospace Workers v. Safeguard Powertech Systems (D.S.D. 1985), 623 F. Supp. 608, the court stated, with respect to an issue which we deem analogous to the one raised in this case:

> Here the center of dispute between the parties is the existence of a settlement itself. Since "settlement" is not defined in the Agreement for purposes of determining when arbitration is proper, the dispute resolution procedures of the contract must be interpreted to determine whether the withdrawal of a grievance prior to arbitration is intended to preclude later arbitration of that issue.
> An examination of case law suggests that the procedural significance of withdrawal of Grievance # 125 is a question for the arbitrator and not the court to decide. [Citations omitted.]

<u>Lodge 862</u>, 623 F. Supp. at 610. Here, the impediment to arbitrating the Mr, Morrison grievance is the Plan and Mr. Morrison's purported waiver of grievances against MPC; "the center of dispute between the parties is the existence of a settlement" or a release under the Plan. The dispute is procedural, not substantive, and should be resolved by the arbitrator, not the court.

We hold that interpretation of the Plan, intertwined as it is with the overall interpretation of the collective bargaining agreement, is subject in the first instance to the jurisdiction of the arbitrator.

Reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

9

Justice W. William Leaphart, specially concurring.

I concur in the result reached by the Court, however I would reach that result by holding that, under state law, a writ of prohibition does not lie against a private party.

The District Court issued a writ of prohibition preventing the Union and the arbitrator, Mr. Corbett, from proceeding with the arbitration. The writ of prohibition is defined by statute in § 27-27-101, MCA, as follows:

> **Definition and function of writ of prohibition.** The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person exercising judicial functions when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person.

The writ of mandate is designed to compel the performance of an act "that the law specifically enjoins as a duty resulting from an office, trust, or station . . . ." Section 27-26-102, MCA. Before a writ of mandate will issue, there must be clear legal duty imposed upon a person or official as a consequence of that person's office, trust or station. As the counterpart of the writ of mandate, the writ of prohibition is designed to stop that same person from exceeding the jurisdiction conferred upon him or her by the applicable law. Although it may be argued that an arbitrator exercises a judicial function, he or she does not do so under the auspices of the state. The arbitrator acts pursuant to agreement between the parties, not pursuant to any statutory grant of jurisdiction attendant to an office, trust or station.

In Kimble Properties v. Department of State Lands (1988), 231 Mont. 54, 56, 750 P.2d 1095, 1096, we stated: "Before a writ of

10

prohibition may be granted the parties seeking the writ must demonstrate that the acts by public officials are clearly unlawful. Section 27-27-101, MCA . . . ." Kimble Properties involved acts by a city and by the Department of State Lands. Although the "public official" component was present in Kimble Properties, the Court concluded that neither the state nor the city acted outside their authority and thus a writ was not appropriate. Kimble Properties, 750 P.2d at 1096.

In International Film Investors v. Arbitration Tribunal of Directors Guild (App. 2nd Dist. 1984), 199 Cal.Rptr. 690, 693, the plaintiff sought, through a writ of prohibition, to prevent the commencement of an arbitration proceeding. The court held that the writ is to enjoin judicial action in excess of jurisdiction, "[i]t does not lie to restrain the acts of an arbitrator." International Film, 199 Cal.Rptr. at 693. Likewise, in the present case, neither the Union nor the arbitrator are public officials exercising judicial functions. Thus they are not subject to a writ of prohibition.

_____
Justice

Justice Charles E. Erdmann joins in the foregoing special concurrence.

_____
Justice

11

December 9, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Thomas J. Joyce
Hennessey, Joyce & Wing
35 Granite Street
Butte, MT 59703

Walter C. Brauer, III
Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C.
1563 Gaylord Street
Denver, CO 80206

Lance Wilbanks
IBEW 1638
P.O. Box 69
Colstrip, MT 59323

W. Wayne Harper, Esq.
Montana Power Company
40 E. Broadway
Butte, MT 59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy