No. 92-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ROBERT L. MILLER,

       Plaintiff and Appellant,

-v-

THE COUNTY OF GLACIER, MONTANA;
WILLIAM BIG SPRINGS, DON KOEPKE,
FRED JOHNSON, as members of the
Board of Count Commissioners of
Glacier County, Montana,

       Defendants and Appellees.

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Glacier,
               The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Timothy J. McKittrick, McKittrick Law Firm, Great
              Falls, Montana

       For Respondent:

              Gary M. Zadick, Ugrin, Alexander, Zadick & Slovak,
              Great Falls, Montana; Dennis P. Clarke, Smith,
              Clarke, Walsh & Gregoire, Great Falls, Montana

FILED

MAR 3 0 1993
Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  February 11, 1993
          Decided:  March 30, 1993

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order of the Ninth Judicial District Court, Glacier County, granting a motion to dismiss. We reverse.

The issue on appeal is whether the District Court erred in granting dismissal to the County based upon the inability of Miller to sue in a court of law after he has been through arbitration.

Robert L. Miller (Miller) had been employed by the Glacier County Medical Center from July 3, 1979 until his termination in October of 1984. At the time of his termination, Miller was head of the radiology department. While employed with the hospital, Miller's employment was covered by a collective bargaining agreement.

Miller's discharge in October of 1984 centered around disposition of an ultrasound machine (machine) which had been purchased by the previous hospital administration. The machine was financed by the First National Bank (Bank) which held a security interest in the machine.

Miller claims that on or about October 29, 1984, he was contacted by hospital personnel and told to crate the machine for pick up by the Bank. Subsequently, according to Miller, he contacted the Bank president and discussed with him the delicate nature of the machine. Miller determined that the best way to make the machine inoperable was to remove the transducers from the machine.

On October 30, Miller's day off, he went to the hospital, removed the transducers from the machine and delivered them to the

2

Bank. Miller next claims that shortly after delivering the transducers to the Bank he received a call from a co-worker claiming that Miller had been fired. Subsequently, Miller went to the Bank, picked up the transducers and returned them to the hospital.

According to the hospital, Miller was fired for misconduct. The hospital claims that Miller refused to follow the instructions of his supervisor on occasions when he did not agree with her. Miller's supervisor, Ms. Vogt, had warned Miller to stay away from the ultrasound issue. Also, according to the hospital, when Ms. Vogt asked Miller why he was at the hospital on his day off (October 30) he told her it was none of her business. He then proceeded to dismantle the machine.

Following his termination, Miller went to his Union and filed a grievance. The Union brought Miller's claim to arbitration. On June 27, 1985, the arbitrator ruled that Miller had been terminated because of insubordination, which constituted just cause under the collective bargaining agreement.

Miller filed a complaint in the Ninth Judicial District Court, on February 19, 1985, alleging wrongful discharge, breach of the duty of good faith and fair dealing, defamation, and exemplary damages. This complaint was later amended to include wrongful discharge in violation of public policy and denial of due process according to Title 42, USC § 1983. The original complaint was filed prior to the decision in the arbitration. On that basis, the County moved to dismiss the proceedings in the District Court.

3

After the filing of significant discovery and other materials throughout the next seven years, the District Court issued a final order on May 29, 1992, granting the County's motion to dismiss. This appeal followed the issuance of that order.

Did the District Court err in granting dismissal to the County based upon the inability of Miller to sue in a court of law after he had been through arbitration?

Miller contends his claims were not preempted by federal law because they are not rooted in the collective bargaining agreement, and as a result, the dismissal by the District Court was improper. Miller also contends that the claims which he has presented could not properly be considered by the arbitrator.

The County contends that Miller has no cause of action in District Court. The County argues that Miller's claims are either preempted by federal law or are based on privileged activity by the County. Further, the County argues that res judicata or collateral estoppel prevents Miller from having his claims heard in District Court.

The District Court in its May 1992 order, determined that Miller was not entitled to both a district court action and an arbitration. The District Court stated that Miller had failed to allege any grounds for vacating, modifying or correcting the arbitrator's award.

The issue before us directly involves the collective bargaining agreement executed by Glacier County Medical Center and its employees. The record before us does not include a copy of

4

that contract. For the assistance of the parties and the District Court on remand, we will now review pertinent legal principles. Collective bargaining agreements must be interpreted by application of federal law, not state law. Teamsters Union v. Lucas Flour Co. (1962), 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. This is known as federal preemption under § 301 of the Labor Management Relations Act of 1947 (LMRA):

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

61 Stat. 156, 29 U.S.C. § 185(a) (1988). See also Foster v. Albertsons, Inc. (Mont. 1992), 835 P.2d 720, 49 St.Rep. 638. The United States Supreme Court has interpreted § 301 as a congressional mandate to develop a unified federal common law to address labor contract disputes. Foster, 49 St.Rep. at 640, citing Textile Workers Union v. Lincoln Mills (1957), 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. The preemption under § 301 has been limited to the cases where resolution of the state law claim requires construing a collective bargaining agreement. As stated in Foster, 49 St.Rep. at 642:

> Lingle [Lingle v. Norge Division of Magic Chef, Inc. (1988), 486 U.S. 399, 1085 S.Ct. 1877, 100 L.Ed.2d 410] holds that a state-law claim is preempted by § 301 only where its resolution requires construing the collective bargaining agreement. This is true even if the state-law analysis involves the same factual considerations as the contractual determination under the collective bargaining agreement of whether the employee was discharged for just cause. Thus, our decision in Brinkman is overruled to

5

the extent that it holds that a state-law claim is preempted merely because resolution of such a claim requires the same analysis of the facts as the contractual determination of just cause under the collective bargaining agreement.

However, a collective bargaining agreement may contain an agreement with the employees that the employee will submit to arbitration "any controversies" arising from the collective bargaining agreement. When such an arbitration provision is included in a contract, it may encompass determination of tort claims within the arbitration itself. Vukasin v. D.A. Davidson & Co. (1990), 241 Mont. 126, 785 P.2d 713. Considering the language of the agreement closely, the arbitrator must then act within the scope of the collective bargaining agreement which he or she is interpreting. Savage Educ. Ass'n v. Richland Co. Elem. Sch. (1984), 214 Mont. 289, 692 P.2d 1237.

Therefore, some collective bargaining agreements are written in such a way that arbitrators are empowered to go beyond the federal common contract law in an attempt to decide controversies existing between the employer and employee. In Zolezzi v. Dean Witter Reynolds, Inc. (9th Cir. 1986), 789 F.2d 1447, the court held that Zolezzi (the employee) had agreed to a clause in the collective bargaining agreement that he would submit to arbitration "any controversy . . . arising out of the employment or termination of employment." Zolezzi, 789 F.2d at 1448. The court held that this enabled the arbitrator to arbitrate intentional tort claims of defamation and invasion of privacy which involved events occurring one year after he quit working for Dean Witter.

6

Similarly, other circuits have held that an ex-employee's claims of defamation, invasion of privacy and intentional infliction of emotional distress against the employer were within the scope of the arbitration clause requiring arbitration of "any controversy . . . arising out of the employment or termination of employment." Aspero v. Shearson American Express, Inc. (6th Cir. 1985), 768 F.2d 106, 109, cert. denied, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564. See also Vukasin v. D.A. Davidson & Co. (1990), 241 Mont. 126, 785 P.2d 713.

Without such wording, an arbitrator is confined to use of federal common contract law in interpreting a collective bargaining agreement. When this is the case, claims that are not preempted by federal contract law and, therefore, are not rooted in the collective bargaining agreement, are capable of being litigated in court. Miller's complaint alleges defamation and other state-law tort claims as well as U.S. constitutional claims such as § 1983 claims and equal protection. The resolution of these claims was not considered by the arbitrator and Miller argues that their determination is not rooted in the collective bargaining agreement.

We emphasize that the United States Supreme Court has determined that § 1983 claims represent an issue which the Congress intended to be judicially determined. McDonald v. West Branch (1984), 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302, 308. According to the Supreme Court, arbitration cannot provide an adequate substitute for judicial proceedings on this issue. McDonald, 466 U.S. at 289. Thus, the Court found that even when an

7

arbitrator considers constitutional issues, such issues are not precluded from subsequent litigation by the theories of res judicata and collateral estoppel. McDonald, 466 U.S. at 289.

In so deciding, the Court delineated reasons for its holding. The Court noted that arbitrators do not necessarily have the expertise required to resolve the complex legal questions that arise in § 1983 actions. McDonald, 466 U.S. at 290. Further, an arbitrator's authority is derived solely from the contract; therefore, the arbitrator does not have the inherent authority to enforce § 1983 decisions. McDonald, 466 U.S. at 290. Also, § 1983 claims are individual claims; yet in most cases, it is the union which pursues the contract action on behalf of the employee. Under these circumstances, there is no guarantee that the union's interest exactly parallels the employee's individual interest. McDonald, 466 U.S. at 291. Therefore, we conclude that Miller's § 1983 claim is justiciable in a court of law, regardless of the arbitration decision.

We conclude that the District Court should be reversed in dismissing the plaintiff's claims in District Court on the grounds that he had been through arbitration. Clearly, Miller's § 1983 claim must be considered by the District Court. Because of the absence of a copy of the collective bargaining agreement, we are not able to comment on which of Miller's state-law claims may be justiciable in District Court.

We reverse the holding of the District Court and remand to the District Court for consideration of Miller's various state-law

claims in light of the authority cited in this opinion and for consideration of his § 1983 claim.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler did not participate in this decision.