DA 07-0592

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 451

ROBERT EDWARDS, DANIEL KOHM,
JOHN DOE, LOUIS GOAZIOU, DAVID
ZROWKA, and RAY ST. ONGE,

        Plaintiffs and Appellants,

    v.

CASCADE COUNTY SHERIFF'S DEPARTMENT,
DAVID CASTLE, in his individual capacity, and
CLYDE "BLUE" CORNELIUSEN, in his individual
capacity, and CASCADE COUNTY,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV 2004-1274
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Elizabeth A. Best (argued), Best Law Offices, P.C., Great Falls, Montana

    For Appellees Cascade County Sheriff's Department, David Castle, and
    Clyde "Blue" Corneliusen:

        Kevin C. Meek, Davis, Hatley, Haffeman & Tighe, P.C.,
        Great Falls, Montana

    For Appellee Cascade County:

        Robert J. Vermillion (argued), Smith, Walsh, Clarke & Gregoire, PLLP,
        Great Falls, Montana

    For Amicus Curiae:

        Karl J. Englund, Karl J. Englund, P.C., Missoula, Montana

        Lawrence A. Anderson (argued), Lawrence A. Anderson, P.C.,
        Great Falls, Montana

Argued:  October 29, 2008
Submitted:  December 2, 2008
Decided:  December 31, 2009

Filed:

_____
Clerk

District Court Judge James A. Haynes delivered the Opinion of the Court.

¶1 Appellants Robert Edwards (Edwards), Daniel Kohm (Kohm), and David Zrowka (Zrowka) are current and former sheriff's deputies who sued their employer on constitutional and tort theories related to political retaliation and statutory wage claims. Appellants John Doe (Doe), Ray St. Onge (St. Onge), and Loius Goaziou (Goaziou), all held the rank of lieutenant in Cascade County and brought similar claims against the defendants. These individuals appeal from the decision of the Eighth Judicial District Court which, by summary judgment, dismissed most of their claims. We affirm in part, and reverse in part, and remand for further proceedings consistent with this Opinion.

¶2 We restate the issues as follows:

¶3 *Issue One: Were Deputies Edwards, Kohm, and Zrowka required to exhaust the Collective Bargaining Agreement grievance procedure before pursuing their political discrimination, wage, and related claims in the District Court?*

¶4 *Issue Two: Does the Montana Human Rights Act constitute the "exclusive remedy" for the claims of Edwards, Kohm, and Zrowka, as well as sheriffs' lieutenants Doe and St. Onge and detention lieutenant Goaziou, precluding any other constitutional, statutory, or tort claims which are premised upon their Montana Human Rights Act claims?*

¶5 *Issue Three: Were all of the Appellants deprived of their constitutional rights to a jury trial, access to the courts, and full legal redress?*

**PROCEDURAL AND FACTUAL BACKGROUND**

3

¶6 Appellants' complaints involve proceedings at the local administrative level, before the Montana Human Rights Bureau (HRB), and in both state and federal courts. A summary of the procedural history related to five of the Appellants' HRB claims is set forth in *Edwards v. Cascade Co.*, 2009 MT 229, 351 Mont. 360, 212 P.3d 289.

¶7 At the time of the 2004 sheriff's primary election in Cascade County, Appellants Edwards, Kohm, and Zrowka were full-time deputy sheriffs covered by the Collective Bargaining Agreement (CBA). Doe and St. Onge were sheriff lieutenants, and Goaziou was a detention staff lieutenant. These latter three positions (Doe, St. Onge, and Goaziou) were not covered by the CBA. Doe used a fictitious name due to the nature of his work.[1] All six Appellants actively supported the losing candidate for sheriff in the Democratic primary election. Respondent Dave Castle (Castle) won the primary election, defeating Sheriff Funyak. There was no Republican opponent. When Funyak resigned as sheriff, Castle was sworn in and immediately appointed Clyde "Blue" Corneliusen (Corneliusen) as undersheriff. The Appellants allege the undersheriff soon expressed and undertook to carry out Castle's retaliatory objective: "I won't be done with any of the Funyak supporters until they are either out of this f—ing office or in their place."

---

[1] In their Answer to the Second Amended Complaint, David Castle, Clyde "Blue" Corneliusen, and the Cascade County Sheriff's Department denied there was any reason for John Doe to use a fictitious name and unilaterally disclosed his identity. "John Doe" remains in the caption.

¶8     All of the Appellants except Deputy Edwards ultimately resigned from their employment with Cascade County Sheriff's Department and Cascade County (collectively referred to as the "County").

**The Collective Bargaining Agreement.**

¶9     The contracted terms of the CBA define the circumstances under which deputy sheriffs covered by the CBA must file a written grievance.  A "grievance," as defined in the CBA, "is limited to a complaint or request of an Employee which involves the interpretation of, application of or compliance with the provisions of this Agreement." CBA, Art. 2.

¶10     The terms of the 2004-2005 CBA define "Employee" as full-time regular deputy sheriffs represented by the Cascade County Deputy Sheriff's Association for the purposes of collective bargaining.  The "Association" refers to the Cascade County Deputy Sheriff's Association.  The "Employer" is defined as the Board of Commissioners of Cascade County and the Cascade County Sheriff.

¶11     The management rights and statutory duties of the office of the sheriff are specifically excluded from the CBA grievance procedure.  CBA, Art. 4.[2]  The "office of

---

[2]  CBA, Article 4, § 2:  "Inherent management rights and Montana State statutes relating to the duties of the 'Office of the Sheriff' are not in anyway [*sic*] directly or indirectly affected by this Agreement and are not subject to the grievance procedure."  The Court further notes the "Duties of Sheriff" are addressed in § 7-32-2121, MCA.

the sheriff" is not defined in the CBA. Promotions are specified as a management right of the sheriff. CBA, Art. 7.[3]

¶12 The CBA contains a non-discrimination clause:

It is the permanent policy of the Employer to provide equal opportunities for employment, retention, and advancement to all Employees regardless of race, color, creed, national origin, sex, age, marital status or *political belief*. [Emphasis added.]
The Employer will not discriminate against any Employee because of Association membership or activity and the Association will not discriminate against any Employee because of lack of membership or lack of activity in the Association. CBA, Art. 6.

¶13 Article 16 of the CBA requires the Employer to pay wages to employees "calculated according to applicable Montana State Law."

¶14 To initiate a CBA grievance, a dispute must be submitted in writing "to the Lieutenant who is the grievant's immediate supervisor." CBA, Art. 10. Five progressive resolution levels exist in the CBA's grievance process, culminating in binding arbitration. CBA, Art. 10.

**Grievance History.**

¶15 Appellants Edwards and Kohm filed grievances in early October 2004 with the Board of Commissioners for Cascade County, and claimed violations of the County's promotion policies. Edwards asserted Undersheriff Corneliusen failed to follow accepted procedure for considering Edwards as a candidate for promotion from Deputy Coroner to

---

[3] CBA, Article 7, § 1: "Promotions are a management right which are governed by the Policies of the Sheriff. The primary objective in promoting personnel is to select the most competent, responsible, effective and eligible members available to fill the open supervisory and command positions."

6

Chief Deputy Coroner. Kohm alleged Sheriff Castle failed to follow proper process in considering Kohm as a candidate for promotion from sergeant to lieutenant. In December 2004, the Board of County Commissioners found in favor of Edwards and Kohm and directed the promotion processes be restarted and redone.

¶16 Appellant Zrowka wrote a letter to Sheriff Castle expressing concerns over the elimination of an evidence technician/photo lab technician position. Zrowka delivered copies of this letter to the County Attorney's office and to the human resources officer.[4]

¶17 In late October 2004, Edwards and Kohm also filed complaints of discrimination with the Montana Department of Labor and Industry (Department) alleging that they were subjected to employment discrimination based on their political beliefs.

¶18 In December 2004, Doe, Goaziou, and Zrowka filed similar complaints of discrimination with the Department.

**Human Rights Bureau Proceedings.**

¶19 In April 2005, the HRB issued its report finding reasonable cause that Edwards was subjected to discrimination, and the HRB retained jurisdiction. On that same date, the HRB issued a report finding no reasonable cause to support Kohm's complaint, and dismissed it. The Department issued Kohm a Notice of Dismissal, accompanied by a

---

[4] Zrowka's letter is generally referred to as a "grievance" in Appellants' Brief and is mentioned in the June 26, 2006 deposition of Zrowka as "Exhibit 1." This letter is not included in the record on appeal.

"right to sue" letter informing Kohm he could pursue his complaint of discrimination in district court.[5]

¶20    In June 2005, the HRB found a lack of reasonable cause to support the complaints of Doe, Goaziou, and Zrowka. Those complaints of discrimination were dismissed, and "right to sue" letters were issued.

¶21    In July 2006, the HRB issued its final order and judgment for Deputy Edwards, resulting in a $40,948.83 award for emotional damages and loss of past wages, a $795.42 per month award of future wages for a year, health care costs for anxiety and depression, and restoration to duty status. The HRB decision permanently enjoined the County from further adverse discriminatory employment action based upon political ideas or beliefs. Neither party appealed this award. Although Edwards prevailed before the HRB on his claim that he was unlawfully retaliated against because of his political beliefs and ideas, he contends he is entitled to pursue independent constitutionally-based claims, including constitutionally-based privacy claims which derive from wrongful disclosure of his private personnel matters and false allegations that he used marijuana.

¶22    Before the HRB investigations were completed, Edwards and Kohm filed this lawsuit in District Court alleging violations of their constitutional rights of freedom of speech and freedom of association under the Montana Constitution and 42 U.S.C. § 1983,

---

[5]    A "right to sue" letter is the practitioner's term derived from usage and the subtext of § 49-2-504(7)(b), MCA.

in addition to Edwards' alleged right to privacy violation. The First Amended Complaint added Doe, Goaziou and Zrowka as plaintiffs.

**Montana District Court Proceedings.**

¶23 Because federal civil rights violations were alleged under 42 U.S.C. § 1983, the County removed all of these claims to federal court. The County then filed a motion in the United States District Court to stay the federal court proceedings on the ground that the administrative proceedings under the Montana Human Rights Act had not been exhausted and finalized. In its motion to stay, the County argued the gravamen of Appellants' claims was grounded in discrimination. The County asserted the Montana Human Rights Act, codified at Title 49, MCA (MHRA), provides the exclusive remedy for illegal discrimination, and in any event, the MHRA required exhaustion of its informal and formal administrative proceedings before these matters could proceed in a district court setting.

¶24 Before the United States District Court issued a ruling on the County's motion to stay, Appellants determined that their allegations of violations of civil rights claims under 42 U.S.C. § 1983 were redundant with their claims under the Montana Constitution and sought leave to file their Third Amended Complaint which dismissed their §1983 claims. Appellants concurrently moved to remand this case to the state district court. The United States District Court granted Appellants' motion to file the Third Amended Complaint and remanded this case to the Montana Eighth Judicial District Court in Cascade County.

¶25 The three Appellants who were deputy sheriffs (Edwards, Kohm, Zrowka) subsequently sought leave to file their Fourth Amended Complaint to add statute-based wage claims, alleging they "recently learned information which, if true, supports a claim that the County has been paying them less than the amounts required by law for deputies sheriff . . . ." The District Court granted leave to file the Fourth Amended Complaint.

¶26 In April 2006, the County for the first time raised the defense that the three Appellants who were deputy sheriffs had failed to exhaust their administrative remedies under the requirements of the CBA. Appellants initially did not oppose the addition of this affirmative defense and filed a notice so indicating.

¶27 In May 2006, the Fifth Amended Complaint added St. Onge as a plaintiff. St. Onge alleged his constitutional rights were violated, he was forced to resign, and is owed wages due. St. Onge admits he filed no discrimination claim under the MHRA. He disputes, however, that the exclusive remedy provision of the MHRA preempts his constitution-based political retaliation claims.

¶28 In July 2006, the County requested dismissal of the political discrimination and wage claims of Edwards, Kohm, and Zrowka because of their failures to exhaust the remedies under the CBA. Appellants opposed dismissal on the following grounds:

1. The terms of the CBA's provision requiring arbitration of an individual's legislatively created cause of action must be "clear and unmistakable," citing *Wright v. Universal Maritime Service Corp.,* 525 U.S. 70, 119 S. Ct. 391 (1998).

2. The United States Supreme Court's decisions in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S. Ct. 1011 (1974) and *Barrentine v. Arkansas-Best Freight Sys., Inc.* 450 U.S. 728, 101 S. Ct. 1437 (1981), stand for the proposition that Appellant deputies' constitutional and tort claims, and statutory discrimination and

wage claims, are based upon the law of the land rather than the "law of the shop," cannot be waived, and are independent of the collective bargaining process, and thus are exempt from the grievance process in the CBA.

3.    The doctrine of equitable estoppel precluded the County's "failure to exhaust remedies" defense.

¶29    Various claims in the Fifth Amended Complaint were then dismissed by consent of the parties.[6]  The District Court's summary judgment decision addressed Appellants' remaining claims for relief under Counts I, II, IV, and V of the Fifth Amended Complaint.

¶30    In Count I, the Appellants alleged various constitutional violations.  They claimed that Castle and Corneliusen retaliated against them "on the basis of their exercise of their freedom to associate with others of similar political beliefs and their exercise of their freedom of speech, when they supported Kent Funyak, and in retaliation for their political ideas and activity."  This count also alleged that the defendants made employment decisions which caused these Appellants to suffer damages, and that these decisions were motivated by the Appellants' "exercise of their constitutional rights to freedom of association and freedom of speech."  They also claimed that the defendants violated their constitutionally-guaranteed right to privacy.

¶31    Count II directly alleged that the defendants discriminated against them in violation of the Montana Constitution, the Montana Governmental Code of Fair Practices, and Title 49, chapters 2 and 3, of the MHRA.  Kohm, Zrowka, Doe, Goaziou,

---

[6]    The dismissed claims were Count III, Interference with Employment; Count V, Goaziou's wage claim; and Count V, overtime wage claims of Kohm and Doe.

11

and Edwards brought these discrimination claims before the HRB. The HRB awarded Edwards damages based on this claim. *See Opinion*, ¶ 21. The HRB denied the claims of Kohm, Zrowka, Doe, and Goaziou, and issued them "right to sue" letters. *See Opinion*, ¶¶ 19-20. St. Onge did not file a discrimination claim with the HRB.

¶32    Count IV alleged intentional or negligent infliction of emotional distress. Included in this claim is the assertion that Appellants "have suffered severe mental and emotional distress . . . ."

¶33    Count V alleged that unpaid wages are owed to Edwards, Kohm, Zrowka, Doe, and St. Onge. The Appellants claimed that they were entitled to compensation for lost wages and liquidated damages pursuant to Title 39, chapter 3, part 2, MCA, and Title 7, chapter 4, part 2, MCA.

¶34    The District Court determined that the essence of Appellants' claims involved discrimination and wage claims. Under the rule in *MacKay v. State*, 2003 MT 274, 317 Mont 467, 79 P.3d 236, the District Court dismissed all of the remaining claims of Deputies Edwards, Kohm and Zrowka, under Counts I (violation of constitutional rights), II (political discrimination), IV (infliction of emotional distress) and V (unpaid wages), on the ground they were barred for failure to exhaust administrative remedies through the CBA grievance process before pursuing their civil claims in District Court. The District Court concluded that the discrimination claims could have been brought under the CBA's discrimination clause, and that the unpaid wage claims could have been brought under Article 16 of the CBA. *See Opinion*, ¶¶ 12, 13. The District Court rejected Appellants' estoppel argument, and Appellants do not raise it on appeal.

12

¶35 Relying on a line of cases beginning with *Harrison v. Chance*, 244 Mont. 215, 223, 797 P. 2d 200, 205 (1990), the District Court also dismissed the constitutional claims (Count I) and infliction of emotional distress (Count IV) claims of Doe and Goaziou. The District Court determined that the gravamen of these claims was discrimination and that the MHRA provides the exclusive remedy for discrimination-related claims. Because Doe and Goaziou failed to bring these claims before the Department, the District Court concluded they were now barred. On similar grounds, the District Court dismissed St. Onge's claims under Counts I and IV. The District Court ruled St. Onge was required to have first filed an MHRA claim to preserve his constitutional and emotional distress claims, since they are subsumed within the exclusivity provision of the MHRA. The political discrimination claims of Doe and Goaziou under Count II remained for trial since these claims had been submitted to the HRB.

¶36 The District Court permitted the statutory wage claims of Doe and St. Onge to proceed, provided they amended their complaint to include a contract theory. They complied, filing a Sixth Amended Complaint. Goaziou, the detention officer, filed no wage claim for sheriff's deputy wages.

¶37 The District Court thereafter granted M. R. Civ. P. 54(b) certification, allowing Appellants to appeal the District Court's summary judgment rulings.

**STANDARD OF REVIEW**

¶38 Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

13

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We review de novo a district court's decision to grant summary judgment. *GRB Farm v. Christman Ranch, Inc.,* 2005 MT 59, ¶ 7, 326 Mont. 236, 108 P.3d 507. When the material facts are undisputed, we review whether the district court correctly applied the law. *Farmers Union Mutual Ins. Co. v. Staples*, 2004 MT 108, ¶ 18, 321 Mont. 99, 90 P.3d 381; *Hogenson Const. of N.D. v. Mont. State Fund*, 2007 MT 267, ¶11, 339 Mont. 389, 170 P.3d 471. The construction and interpretation of a contract is a question of law. *Ophus v. Fritz,* 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192.

## DISCUSSION

¶39 Appellants fall into two categories:

1. The three full-time deputy sheriffs who were defined as an "Employee" under the negotiated terms of the CBA: Edwards, Kohm, and Zrowka.

2. The sheriff's lieutenants Doe and St. Onge and detention lieutenant Goaziou who were not included in the definition of "Employee" under the terms of the CBA.

¶40 We address the following:

I. Were Edwards, Kohm, and Zrowka—the three full-time deputy sheriffs defined as "Employees" under the CBA—required to exhaust the CBA grievance procedure before pursuing their political discrimination, wage and related claims in the District Court?

II. Does the MHRA constitute the "exclusive remedy" for the claims of Edwards, Kohm, and Zrowka, as well as sheriff's lieutenants Doe and St. Onge and detention lieutenant Goaziou, precluding any other constitutional, statutory based, or tort claims which are premised upon their MHRA claims?

14

III.	Were all of the Appellants deprived of their constitutional rights to a jury trial, access to the courts, and full legal redress?

¶41	At the outset we note a grievance under the CBA must be initiated by a written notification to the "Lieutenant who is the grievant's immediate supervisor . . . ." The grievances filed by Edwards and Kohm in October 2004 with the Board of Commissioners for Cascade County involved promotion disputes which were management rights specifically excluded from the CBA grievance process. CBA, Art. 4 and Art 7. Zrowka delivered his letter to the Cascade County Attorney's Office and human resources officer, rather than to his supervising lieutenant. The District Court correctly concluded none of these deputies initiated any grievance under the terms of the CBA before bringing these claims in District Court.

¶42	*Issue One: Were Deputies Edwards, Kohm, and Zrowka required to exhaust the CBA grievance procedure before pursuing their political discrimination, wage, and related claims in the District Court?*

¶43	We start this analysis by confirming that because Doe, St. Onge, and Goaziou were not covered by the CBA, their respective claims are unaffected by the following discussion.

¶44	The District Court determined that the gravamen of Counts I, II, and IV, was discrimination, and that the gravamen of Count V was unpaid wages. Relying upon the CBA's non-discrimination clause, Article 16 of the CBA, and this Court's precedent in *MacKay*, the District Court determined that Edwards, Kohm, and Zrowka were required to grieve their discrimination and wage claims before they could present them in District Court. Because they failed to do so, these claims were now barred.

15

¶45   Deputies Edwards, Kohm, and Zrowka argue that because their constitutional and statutory rights do not derive from the CBA, these claims are not subject to preemption under the CBA. It follows, they assert, they are not required to exhaust the CBA grievance procedure before filing a lawsuit for redress of violations they claim under Montana's Constitution: Article II, Section 6 (freedom of assembly), Section 7 (freedom of speech), Section 8 (right of participation in government), Section 10 (right of privacy—Edwards), and Section 17 (due process of law); MHRA statutory discrimination claims (Title 49, MCA); and statutory wage claims under §§ 7-4-2503 through -2508, MCA. They additionally argue the wording of the CBA makes clear its grievance procedure is limited, i.e., its coverage excludes statute-based claims and only prohibits discrimination for "Association" activities.[7]

¶46   Appellants, joined by Amicus Montana Trial Lawyers Association, further contend any collective bargaining agreement governs only limited employment issues such as wages, hours, or fringe benefits for the good of the whole of the members of a collective bargaining unit. They assert a collective bargaining agreement may never bargain away or waive any individual member's statutory or constitutionally-based rights and remedies.

¶47   The County counters that the CBA includes express provisions that the Employer will "provide equal opportunities . . . to all Employees regardless of . . . political belief," and will pay wages "according to applicable Montana State Law . . . ." Since these

_____

[7] CBA, Art. 6, in part, states: "The Employer will not discriminate against any Employee because of Association membership or activity. . . ."

16

contractual provisions were negotiated, bargained for, and written into the CBA, and specifically address the two primary categories in dispute, the County reasons that Appellants Edwards, Kohm, and Zrowka were required to invoke the CBA grievance procedure to attempt to resolve these two categories of their claims before proceeding in District Court. The County asserts that since the Appellants' constitutional and statute-based discrimination claims are intertwined with the discrimination claims covered under the CBA grievance procedure, these claims also fall within the scope of the CBA.

¶48 The parties' arguments mirror the tension that has long-existed between two competing aspects of management labor relations policy. These competing policies are well described in *Barrentine*:

> The first, reflected in statutes governing relationships between employers and unions, encourages the negotiation of terms and conditions of employment through the collective-bargaining process. The second, reflected in statutes governing relationships between employers and their individual employees, guarantees covered employees specific substantive rights. A tension arises between these policies when the parties to a collective-bargaining agreement make an employee's entitlement to substantive statutory rights subject to contractual dispute-resolution procedures.

*Barrentine*, 450 U.S. 734-35, 101 S. Ct. at 1441.

¶49 Under Montana law, an employee covered by the terms of a collective bargaining agreement generally must first attempt to resolve covered contract disputes by exhausting the grievance procedures written into the agreement before proceeding into court. *MacKay*, ¶ 25; *Irving v. School Dist. No. 1-1A, Valley Co.*, 248 Mont. 460, 469, 813 P.2d

17

417, 422 (1991); *Lueck v. United Parcel Serv.*, 258 Mont. 2, 8, 851 P.2d 1041, 1044-45 (1993). The policy of the state of Montana favors resolving covered contract labor disputes, if possible, according to the terms of a collective bargaining agreement. *Small v. McRae*, 200 Mont. 497, 502, 651 P.2d 982, 985 (1982). The reasoning behind this rule is to encourage a " 'friendly adjustment of all disputes between public employers and their employees . . . .' " *Small*, 200 Mont. at 502, 651 P.2d at 985 (quoting § 39-31-101, MCA).[8]

¶51    Federal law, rather than state law, governs the interpretation of the scope of a collective bargaining agreement. *Miller v. Glacier Co.*, 257 Mont. 422, 425, 851 P.2d 401, 403 (1993) (citing *Teamsters Union v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571 (1962).

> "As a general rule . . . federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. (Citations omitted). But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant. (Citations omitted.)

. . .

---

[8]  Section 39-13-101, MCA, reads as follows: "In order to promote public business by removing certain recognized sources of strife and unrest, it is the policy of the state of Montana to encourage the practice and procedure of collective bargaining to arrive at friendly adjustment of all disputes between public employers and their employees."

> "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances."

.  .  .

> To allow a member of the collective bargaining unit to completely sidestep available procedures would, just as under federal law, exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements and effectively deprive employers and unions of the ability to establish a uniform and exclusive method for the orderly settlement of employee grievances.

*Small,* 200 Mont. at 503, 504, 651 P.2d at 986 (quoting *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652-53, 85 S. Ct. 614, 616-17 (1965) (construing the National Labor Relations Act).[9]

¶52 Section 301 of LMRA has served as a springboard for creation of federal common law for a uniform interpretation of collective bargaining agreements.[10] *Foster v.*

---

[9] The National Labor Relations Act of 1935 (NLRA), 29 U.S.C. §§ 151-169 guarantees employees the right to self-organization, to form, join, or assist labor organizations, and to bargain collectively. The Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 141, amended the NLRA and generally imposes limits on a covered employee's ability to strike, picket, and boycott.

[10] Section 301, codified at 29 U.S.C. § 185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Albertsons, Inc.*, 254 Mont. 117, 122, 835 P.2d 720, 724 (1992) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S. Ct. 912 (1957)). In *Foster* we noted the United States Supreme Court has held § 301 preemption ensures federal law is the basis for interpreting collective bargaining agreements. *Foster,* 254 Mont. at 125, 835 P.2d at 725 (implied covenant of fair dealing claim preempted by the scope of the collective bargaining agreement) (citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877 (1988)).

¶53   When reviewing whether a claim is covered by the terms of a collective bargaining agreement, we interpret its terms "according to the plain, ordinary language used by the parties." *Winchester v. Mountain Line*, 1999 MT 134, ¶ 28, 294 Mont. 517, 982 P.2d 1024. The Court must ascertain " 'whether the party seeking arbitration is making a claim which on its face is governed by the contract.' " *Klein v. State*, 2008 MT 189, ¶ 20, 343 Mont. 520, 185 P.3d 986 (quoting *United Steelworkers of Am. v. Am. Mfg. Co.,* 363 U.S. 564, 568, 80 S. Ct. 1343, 1346 (1960)). If the claim is covered, the grieving party must pursue and exhaust the remedies provided for in the collective bargaining agreement. *Klein*, ¶ 20 (citing *Lueck*, 258 Mont. at 8, 851 P.2d at 1044-45). We have previously stated that "[o]nly in those cases where it is certain that the arbitration clause contained in a collective bargaining agreement is not susceptible to an interpretation that covers the dispute is an employee entitled to sidestep the provisions of the collective bargaining agreement." *Small*, 200 Mont. at 504, 651 P.2d at 986; *Winchester*, ¶ 24; *Klein*, ¶ 11.

¶54 In *Klein,* we determined the plaintiff's tort claim of deceit was neither "intimately bound" nor "rooted" in the wording of that particular collective bargaining agreement. *Klein,* ¶ 31. The scope of the language in *Klein's* collective bargaining agreement, on its face, addressed neither deceit nor infliction of emotional distress. Similarly, in *Winslow v. Mont. Rail Link, Inc.*, 2005 MT 217, 328 Mont. 260, 121 P.3d 506, we held:

> Winslow has consistently argued that his theory did not involve the CBA, but instead pertained to allegations that MRL used a false pretext to fire him in order to further a scheme designed to intimidate railroad workers so that they would not file injury reports. After review of the record, we conclude that Winslow's claims are not "firmly rooted" in a breach of the CBA itself . . . .

*Winslow,* ¶ 36.

¶57 The scope of a collective bargaining agreement may be negotiated to include arbitration of any controversy. *Miller,* 257 Mont. at 426-27, 851 P.2d at 403-04. Thus, a broadly written arbitration provision requiring arbitration of "any controversy" encompasses a tort claim of assault. *Vukasin v. D.A. Davidson & Co.*, 241 Mont. 126, 133, 785 P.2d 713, 718 (1990) (citing *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1449-50 (9th Cir. 1986)). However, when the scope of a collective bargaining agreement is written more narrowly than "any controversy" or "all claims," the contract wording must be reviewed to determine which claims are not rooted in the collective bargaining agreement and are capable of being litigated directly in court. *Miller*, 257 Mont. at 427, 851 P.2d at 404.

¶58 We apply the above labor law rules to the constitutional, statutory discrimination, emotional distress, and statutory wage claims of Edwards, Kohm, and Zrowka. Each

21

claim must be evaluated to determine to what extent, if any, if it is covered by the wording of the collective bargaining agreement. The claims fall into three categories:

1. Constitution-based claims (assembly, speech, participation, privacy, due process);

2. Statutory claims (discrimination and wage);

3. Tort claims (emotional distress).

**1. Constitution-based claims.**

¶59 Appellants cite *Dorwart v. Caraway*, 2002 MT 240, 312 Mont. 1, 58 P.3d 128, for the proposition that Montana's constitutional guarantees of Freedom of Assembly (Art. II, Section 6), Freedom of Speech (Art. II, Section 7), Right of Privacy (Art. II, Section 10), and Due Process of Law (Art. II, Section 17) are self-executing constitutional provisions, wholly independent of the CBA. The District Court concluded the constitutional claims of interference with assembly, speech, privacy and due process made by Edwards, Kohm, and Zrowka are actually components of their underlying political discrimination claims. Accordingly, it held that the Appellants were required both to grieve them under the CBA's discrimination clause and present them to the HRB in order to preserve them in District Court.

¶60 As discussed below, *see Opinion*, ¶ 78, we agree with the District Court that for purposes of the MHRA the gravamen of Count I was discrimination and that the Appellants were required to bring these claims before the HRB as a precondition to filing suit in District Court. *See Shields v. Helena School District No. 1*, 284 Mont. 138, 149, 943 P.2d 999, 1005 (1997). Thus, irrespective of whether the claims in Count I were

covered by the CBA itself, these Appellants are now barred from bringing the claims in Count I for failure to comply with the MHRA.[11]

**2. Statutory discrimination and wage claims.**

¶61 The District Court determined the CBA, on its face, covered the discrimination and wage claims of Edwards, Kohm, and Zrowka. Appellants Edwards, Kohm, and Zrowka assert the CBA only prohibits discrimination "because of Association membership or activity." They also argue Article 4 of the CBA excludes the statutory duties of the office of the sheriff from the grievance process, including Appellants' statute-based discrimination claims and wage claims.

¶62 The County responds that the first paragraph of the non-discrimination clause in the CBA clearly addresses discrimination, including political discrimination. The full text of the non-discrimination clause found at Article 6 in the CBA states:

> It is the permanent policy of the Employer to provide equal opportunities for employment, retention, and advancement to all Employees regardless of race, color, creed, national origin, sex, age, marital status or *political belief.* (Emphasis added.)
> The Employer will not discriminate against any Employee because of Association membership or activity and the Association will not discriminate against any Employee because of lack of membership or lack of activity in the Association.

¶63 The wage clause, Article 16 of the CBA, simply requires the Employer to pay wages to employees "calculated according to applicable Montana State Law."

---

[11] We reiterate that these Appellants could proceed in District Court with their employment discrimination claims; it is their "constitution-based" claims that are barred for failure to raise them before the HRB.

¶64 In *Wright*, the United States Supreme Court held that a collective bargaining agreement does not waive an employee's right to a judicial forum for a legislatively created cause of action unless it contains a "clear and unmistakable" waiver of that right. *Wright*, 525 U.S. at 81, 119 S. Ct. at 397; *see also 14 Penn Plaza, LLC v. Pyett*, ___ U.S. ___, 129 S. Ct. 1456, 1474 (2009) (holding that a collective bargaining agreement which "clearly and unmistakably" requires union members to arbitrate claims brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, is enforceable as a matter of federal law). Nothing in the language of the CBA, including Art. 6, "clearly and unmistakably" announces any requirement to arbitrate the statutory discrimination or wage claims presented here. The first paragraph of Article 6 merely announces the County's general policy regarding non-discrimination. The second paragraph refines the general policy by further announcing that the County will not discriminate "because of Association membership or activity."

¶65 Moreover, Art. 4 of the CBA specifically excludes the duties of the office of the sheriff from the CBA grievance procedure. The duties of a sheriff include adherence to Montana's statutory non-discrimination policy commanded by the MHRA, as well as the duty of complying with the statutory wage scheme for deputy sheriffs set forth in § 7-4-2508, MCA. A statutory enforcement mechanism exists for wage claims under Title 39, chapter 3, part 2, MCA. No language in the CBA unmistakably waives the Appellants' rights to seek judicial relief to enforce the County's corresponding duties.

¶66 We therefore conclude that the CBA does not "clearly and unmistakably" cover Appellants' statutory discrimination and wage claims. The scope of the CBA does not

24

require arbitration of the discrimination claims of Kohm and Zrowka, and the wage claims brought by Edwards, Kohm, and Zrowka, as a precondition to filing suit in District Court.

**3. Emotional distress tort claims.**

¶67    Count IV alleges emotional distress, presumably stemming from Appellants alleged constitutional and discrimination injuries.  Infliction of emotional distress can be an independent cause of action.  *Sacco v. High Country Independent Press, Inc.*, 271 Mont. 209, 896 P.2d 411 (1995).  However, emotional distress damages are specifically covered by the remedy provisions of the MHRA.  Section 49-2-506, MCA; *Benjamin v. Anderson*, 2005 MT 123, 327 Mont. 173, 112 P.3d 1039.  In fact, the District Court determined that Appellants' emotional distress claims, like the claims in Count I, at their essence arose out of the discrimination claims which fall within the exclusive remedy provisions of the MHRA.  We agree with the District Court.  Thus, irrespective of whether the claims in Count IV were covered by the CBA itself, the Appellants are prohibited from bringing them in District Court because they failed to properly bring them before the HRB.

¶68    For these reasons, we hold that the Appellants' failure to bring the claims in Counts I and IV before HRB bars them from pursuing them now, regardless of whether they are covered by the terms of the CBA.  We therefore affirm the District Court's dismissal of Counts I and IV.

¶69    However, we reverse the District Court's dismissal of the statutory discrimination claims of Kohm and Zrowka.  We conclude that the CBA does not "clearly and

unmistakably" cover these claims and that Kohm and Zrowka may pursue their statutory discrimination claims in District Court, since they did bring them before the HRB and were issued "right to sue" letters.[12]

¶70     We also reverse the dismissal of the statutory wage claims of Edwards, Kohm, and Zrowka. These Appellants did not waive their right to seek relief for violations of Montana's wage protection statutes. These claims may now proceed in the District Court.

¶71     *Issue Two: Does the MHRA constitute the "exclusive remedy" for the claims of Edwards, Kohm, and Zrowka, as well as sheriffs' lieutenants Doe and St. Onge and detention lieutenant Goaziou, precluding any other constitutional, statutory, or tort claims which are premised upon their MHRA claims?*

¶72     Following the reasoning in a line of cases commencing with *Harrison*, the District Court ruled the gravamen of the constitutional and emotional distress tort claims of Doe, St. Onge and Goaziou was based on political discrimination for their individual, personal political beliefs. As such, these claims fell within the exclusive remedy provision of the MHRA. Section 49-2-509(7), MCA, recodified in 2007 as § 49-2-512(1), MCA, states:

> The provisions of this chapter establish the exclusive remedy for acts constituting an alleged violation of chapter 3 or this chapter, including acts that may otherwise also constitute a violation of the discrimination provisions of Article II, section 4, of the Montana constitution or 49-1-102. A claim or request for relief based upon the acts may not be entertained by a district court other than by the procedures specified in this chapter.

---

[12]   Because Edwards has received a favorable ruling from the HRB and has not appealed its decision, he is barred from pursuing further claims by virtue of the MHRA. *Shields*, 284 Mont. at 149, 943 P.2d at 1005. In this connection, we note our agreement with the District Court's determination that Edwards' constitutional privacy claims were discrimination claims properly submitted before the Department.

¶73 The District Court permitted Doe and Goaziou to pursue their constitutional and emotional distress claims only in the context of their political discrimination claims. Counts I (violation of constitutional rights) and IV (infliction of emotional distress), as independent claims, were dismissed. Since St. Onge did not file a discrimination complaint under the MHRA, the District Court ruled St. Onge is disallowed from proceedings with his Count I and Count IV claims. We uphold the District Court on this issue.

¶74 Appellants Doe, St. Onge and Goaziou argue a plain reading of § 49-2-509(7), MCA, extends the MHRA's exclusive remedy provision only to the discrimination provisions of Article II, Section 4, of the Montana Constitution.[13] These Appellants assert none of their claims were raised under Article II, Section 4.

¶75 In response, the County argues the District Court properly determined that the underlying basis for all of the Appellants' claims under Counts I and IV is discrimination based upon political belief. We have consistently held the MHRA provides "the exclusive remedy for illegal discrimination." *Shields*, 284 Mont. at 149, 943 P.2d at 1005 (citing *Harrison*, 244 Mont. at 223, 797 P.2d at 205); *Arthur v. Pierre Ltd.,* 2004 MT 303, ¶ 18, 323 Mont. 453, 100 P.3d 987 (The MHRA "bars a plaintiff from pursuing other tort claims where those claims arise from underlying allegations of . . .

---

[13] Article II, Section 4 of the Montana Constitution reads:

> **Individual dignity.** The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the

27

discrimination . . . ."). More recently we upheld the converse position in a dual MHRA and Wrongful Discharge from Employment Act (WDEA) claim, holding a WDEA claim which is not based upon "underlying allegations of . . . discrimination" is not precluded by the exclusive remedy provisions of the MHRA. *Vettel-Becker v. Deaconess Med. Ctr. of Billings, Inc.,* 2008 MT 51, ¶ 40, 341 Mont. 435, 177 P.3d 1034 ("Discrimination can occur without a wrongful discharge and a wrongful discharge can occur without a discriminatory act.").

¶76 Section 49-2-509(7), MCA (2007), extends the exclusive remedy under the MHRA to any violation of Article II, Section 4 of the Montana Constitution. Article II, Section 4 forbids discrimination against any person for exercising his or her political rights or expressing their political ideas. The MHRA implements the non-discrimination rights enumerated in Article II, Section 4 of the Montana Constitution. The exclusivity rule applies to the political discrimination claims of Doe, Goaziou, and St. Onge, which may only be raised within the statutory framework of a MHRA discrimination claim.

¶77 The District Court correctly ruled the gravamen of the non-wage claims of Doe, Goaziou and St. Onge are grounded in allegations of political discrimination. All of the Appellants alleged that their damages, including for severe emotional distress, were "a direct and proximate result of the discrimination . . . ." Doe's and Goaziou's MHRA complaints before the Department alleged discrimination and retaliation in employment based upon political ideas, beliefs, and activity, all in violation of the MHRA, the

---

exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

Montana and United States Constitutions, and the "Civil Rights Act of 1964 and 1991, as amended." Each of the Appellants except St. Onge sought damages under the MHRA, including for emotional distress. Before the District Court, Doe, Goaziou and St. Onge alleged that the County and Sheriff's office "employees acting at their direction began to retaliate against [Appellants] . . . on the basis of their exercise of their freedom to associate with others of similar political beliefs . . . in retaliation for their political ideas and activity" and that the County "employed hiring, promotion, and transfer procedures which altered [Appellants'] terms and conditions of employment, and which retaliated against [Appellants]."

¶78    We conclude the essence of the Appellants' constitution-based claims under Count I, as well as their emotional distress claims under Count IV, is grounded in their allegations of politically-motivated discrimination that was initiated by the sheriff. The exclusive remedy for this form of alleged political discrimination is the MHRA. We affirm the District Court's ruling that the discrimination claims of Doe and Goaziou were covered by the MHRA. Because they were issued "right to sue" letters, they may now pursue their claims in District Court. We also affirm the District Court's ruling that St. Onge failed to preserve his discrimination claims by failing to file a complaint under the MHRA.

¶79    *Issue Three: Were all of the Appellants deprived of their constitutional rights to a jury trial, access to the courts, and full legal redress?*

¶80    Appellants broadly argue on appeal that the effect of the District Court's summary judgment order deprived them of the right to access the court system to redress that

29

remedy. These arguments are undeveloped on appeal and were neither raised in nor addressed by the District Court. Moreover, the record contains no evidence of compliance with M. R. Civ. P. 24(d) or M. R. App. P. 27 related to notice regarding constitutional questions when the State is not a party.

¶81 In *State v. Johnson*, 2005 MT 48, 326 Mont. 161, 108 P.3d 485, we declined to address the defendant's constitutional challenge because we could not "make such a determination on the basis of the abbreviated arguments before us." *Johnson*, ¶11. Likewise, in *State v. Garrymore*, 2006 MT 245, 334 Mont. 1, 145 P.3d 946, the defendant asserted that Article II, Sections 24 and 26 of the Montana Constitution afford a greater jury trial right than does the Sixth Amendment to the United States Constitution; yet, critically, he "fail[ed] to offer a compelling reason why the greater jury trial right in Montana dictate[d] a different result in his case." *Garrymore*, ¶39. As a result, we found his argument "too undeveloped to undertake a distinctive application of state constitutional principles," and we accordingly did not consider the argument further. *Garrymore*, ¶¶ 38-39. The identical situation exists here.

¶82 Moreover, Appellants conceded in their reply brief that "Plaintiffs have not raised the issue of the constitutionality of the MHRA . . . ." Accordingly, we decline to address this issue further.

## CONCLUSION

¶83 The District Court did not err in dismissing Counts I and IV of the Appellants' complaint. The gravamen of these constitutional and emotional distress claims is political discrimination, and these claims are therefore governed by the exclusivity

30

provisions of the MHRA. Moreover, Edwards' violation of privacy claims relate to his discrimination claims under the MHRA, which have been finalized by the HRB. Thus, irrespective of whether these claims were covered by the CBA itself, Edwards, Kohm, and Zrowka were required to submit them to the HRB. Because all of the Appellants failed to present the claims in Counts I and IV before the HRB in the context of a claim for discrimination, none of the Appellants may now pursue these claims in District Court.

¶84 However, the District Court did err in concluding that the statutory discrimination and wage claims of Edwards, Kohm, and Zrowka were covered by the CBA. The statutory wage claims of these Appellants may be presented in the District Court.

¶85 Moreover, Kohm and Zrowka are not prohibited from pursuing their discrimination claims in District Court since they properly presented them to the HRB and were issued "right to sue" letters. Edwards may not, however, bring a discrimination claim since his discrimination claim was resolved by the HRB and has not been appealed.

¶86 Doe, St. Onge, and Goaziou are not covered by the CBA. Appellants Doe, St. Onge, and Goaziou filed claims of violations of their constitutional rights as well as claims of intentional or negligent infliction of emotional distress. The gravamen of these constitutional and emotional distress claims is political discrimination. Doe and Goaziou filed MHRA complaints and were issued "right to sue" letters. Their claims remain for resolution before the District Court. Moreover, the statutory wage claims of Doe and St. Onge also remain for resolution before the District Court.

¶87 Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

/S/ JAMES A. HAYNES
District Court Judge James A. Haynes
sitting for former Chief Justice Karla M. Gray

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE