FILED

March 8 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0367

DA 15-0367

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 53N

JEFF T. OLHAUSEN,

      Plaintiff and Appellant,

    v.

H&H CONTRACTING, INC.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Deer Lodge, Cause No. DV-13-93
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeff T. Olhausen (self-represented); Anaconda, Montana

      For Appellee:

          Daniel D. Manson, Manson Law Firm, P.C.; Butte, Montana

                Submitted on Briefs:  February 3, 2016
                           Decided:  March 8, 2016

Filed:

                                   Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jeff T. Olhausen appeals an order by the Third Judicial District Court, Deer Lodge County, regarding his wage claims against H&H Contracting, Inc. We restate the issues on appeal as follows: (1) whether the District Court correctly concluded that Olhausen's claims were preempted by federal law, and his only potential recovery was a wage claim under state or federal law; (2) whether the District Court erred in determining the amount of wages H&H owed to Olhausen; and (3) whether the District Court erred in ruling that Olhausen could not introduce into evidence a draft collective bargaining agreement. We affirm.

¶3 On May 1, 2013, H&H, the International Union of Operating Engineers, Local 400 (Operators' Union), and the Laborers' International Union of North America, Local 1686, (Laborers' Union) signed a collective bargaining agreement (Agreement). H&H hired Olhausen in June 2013 and terminated his employment on September 4, 2013. Olhausen retrieved his final paycheck from H&H on September 5, 2013. During the course of Olhausen's employment at H&H, he was a member of the Operators' Union. At trial, Olhausen produced a letter, dated October 1, 2013, which he allegedly sent to H&H and the Operators' Union, stating that there were errors in his paychecks. Olhausen also

2

produced a second letter to the Operators' Union, dated October 17, 2013, claiming he was owed wages. John Riordan, the Operators' Union's business manager, investigated Olhausen's complaint. Riordan concluded that Olhausen was paid in full and in a timely manner for all hours worked and was not entitled to additional or penalty pay.

¶4 On December 12, 2013, Olhausen filed a complaint against H&H in the District Court, alleging that he was either underpaid or not paid at all for certain hours and days he worked between June and September. He requested relief in the form of missing wages, punitive damages, and a penalty pursuant to the Agreement. After ruling on pretrial motions, the District Court held a bench trial. On March 10, 2015, the District Court signed a proposed pretrial order that contained both parties' signatures and superseded the pleadings. In the pretrial order, Olhausen again claimed that he was either not paid or underpaid for several hours and days worked between June and September. H&H contended that Olhausen was paid correctly for every hour and day that he worked as an employee of H&H. However, on March 10, 2015, H&H filed a notice of correction to the pretrial order, alleging that it discovered a miscalculation in Olhausen's wages. H&H contended that, when originally calculating Olhausen's wages, it was under the impression that Olhausen was a member of the Laborers' Union, rather than the Operators' Union, which receives a higher wage. Olhausen thus was underpaid for certain hours he worked.

¶5 On March 29, 2015, the District Court entered its findings of fact, conclusions of law, and final order. The court ordered H&H to pay Olhausen $432.66 to correct its error

3

regarding his pay and assessed a 15% penalty as required by § 39-3-206, MCA, for a total of $497.56. Olhausen appeals.

¶6 We review a district court's findings of fact in a civil bench trial to determine whether they are supported by substantial credible evidence. *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 9, 294 Mont. 478, 982 P.2d 1002. In doing so, we view the evidence in the light most favorable to the prevailing party. *DeNiro*, ¶ 9. We review the District Court's conclusions of law to determine whether they are correct. *DeNiro*, ¶ 9.

¶7 Collective bargaining agreements are governed by federal law. *Edwards v. Cascade Cnty. Sheriff's Dep't*, 2009 MT 451, ¶ 50, 354 Mont. 307, 223 P.3d 893. "As a general rule . . . federal labor policy requires that individual employees wishing to assert contract grievances *must* attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Small v. McRae*, 200 Mont. 497, 503, 651 P.2d 982, 986 (1982) (quoting *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S. Ct. 614, 616 (1965)) (emphasis in original); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290 (1983) ("Ordinarily, . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement.").

¶8 Article V, Section 3 of the Agreement provides:

> Payrolls will be assumed to be correct and there will be no adjustment unless an employee makes a protest within ten (10) days in writing to the UNION and the EMPLOYER. This is not intended to by-pass State or Federal law concerning wages or the payment thereof; but only indicates that the UNION will not process a complaint unless within the ten (10) days.

4

Article VII of the Agreement sets forth the grievance and arbitration provisions, and requires the employer and the union to attempt to settle grievances regarding any violation of the Agreement's terms. The letter Olhausen produced at trial indicates that he first notified the Operators' Union of his wage claims on October 1, more than ten days after his employment was terminated and he retrieved his last paycheck. Nevertheless, Riordan investigated Olhausen's complaint. At the end of his investigation, Riordan sent Olhausen a letter stating: "It was determined after reviewing payroll records that you were paid in full and in a timely manner for all hours worked. You are not entitled to any additional pay or penalty pay."

¶9 Olhausen was bound by the result of the Agreement's grievance procedure unless the union representing him in the procedure "act[ed] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2290. If this were the case, Olhausen's remedy would be to bring suit against both his employer and the union. His suit against the employer would rest on § 301 of the Labor Management Relations Act (Act), 29 U.S.C. § 185, which provides a mechanism for individual employees to enforce personal rights, such as wage claims. *See DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2290. His suit against the union would have to be based on a breach of the union's duty of fair representation. *See DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2290. Although such lawsuits comprise two causes of action, "the two claims are inextricably interdependent." *DelCostello*, 462 U.S. at 164, 103 S. Ct. at 2291. Thus, to prevail against either H&H or the Operators' Union,

5

Olhausen would have to demonstrate that the union breached its duty. *See DelCostello*, 462 U.S. at 165, 103 S. Ct. at 2291.

¶10 Throughout his various pleadings and the trial, Olhausen never alleged that the Operators' Union breached its duty of fair representation. After filing his complaint, Olhausen continued to claim that he was owed wages for different hours and days worked, at times citing dates and times that he previously had not claimed. Olhausen never attempted to resolve these wage claims through the grievance and arbitration provisions set forth in Article VII of the Agreement. Olhausen thus is not entitled to recovery under the Agreement. By the same logic, the District Court did not err in not applying the penalty provision set forth in the Agreement. As the District Court recognized, Olhausen's only possible source of recovery was a wage claim under state or federal law. Thus, the Court was correct in assessing a penalty under Montana's wage protection statutes, while declining to impose any penalty under the Agreement itself.

¶11 In his appellate brief, Olhausen makes a blanket assertion that "the District Court erred in not holding [H&H] accountable for not paying Olhausen all wages due at [the] time of termination." Olhausen does not allege any specific hours, days, or amounts for which he was not paid. Nor does he argue that the District Court's decision was not supported by the evidence before it. Likewise, Olhausen's brief contains no support for his naked assertion that the District Court erred "by not holding [H&H] accountable to all State and Federal Laws governing pay dispersal." Though Olhausen cites to multiple state laws, he does not indicate how those laws apply to this case.

6

¶12    While "we are willing to make accommodations for pro se parties by relaxing those technical requirements which do not impact fundamental bases for appeal. . . , a district court's decision is presumed correct and it is the appellant who bears the burden of establishing error by that court." *In re Marriage of McMahon*, 2002 MT 198, ¶ 7, 311 Mont. 175, 53 P.3d 1266. As far as Olhausen's complaints about the District Court's ruling may pertain to the court's findings, a review of Olhausen's appellate brief fails to clarify what specific findings he takes issue with. Accordingly, we will not disturb the District Court's findings. *See McMahon*, ¶ 7.

¶13    Olhausen also contends that the District Court erred in sustaining H&H's objection to Olhausen's attempt to introduce a 2010 unsigned draft of the Agreement sent to him by the Operators' Union. However, he does not present any argument to support this assertion. Accordingly, we will not consider his argument that the District Court erred in its evidentiary ruling. *See McMahon*, ¶ 6 ("This Court has repeatedly held that we will not consider unsupported issues or arguments."); *Wohl v. City of Missoula*, 2013 MT 46, ¶ 48, 369 Mont. 108, 300 P.3d 1119 ("A party is responsible for developing legal analysis that supports its position on appeal.").

¶14    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct and its findings of fact are not clearly erroneous. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE