# IN THE COURT OF APPEALS OF IOWA

--------

No. 24-1369
Filed January 28, 2026

--------

**Matthew Eimers,**
Plaintiff–Appellant,

v.

**Iowa Department of Public Safety,**
Defendant–Appellee.

--------

Appeal from the Iowa District Court for Polk County,
The Honorable Scott D. Rosenberg, Judge.

--------

**AFFIRMED**

--------

Pamela J. Walker (argued), Johnston, attorney for appellant.

Brenna Bird, Attorney General; Breanne A. Stoltze (argued), Assistant
Solicitor General; Jeffrey Peterzalek, Deputy Attorney General; Eric
Wessan, Solicitor General; Patrick C. Valencia, Deputy Solicitor General;
William C. Admussen (until withdrawal), Assistant Solicitor General; and
John Lundquist, Assistant Attorney General, attorneys for appellee.

--------

Heard at oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Badding, J.

1

**BADDING, Judge.**

Retired state trooper Matthew Eimers appeals the district court's post-trial order vacating the jury's $6,144 award and dismissing Eimers' wage-collection suit because of his failure to exhaust the grievance procedure under his collective bargaining agreement. On appeal, Eimers argues his claims are exempt from the exhaustion requirement because the benefits he seeks are guaranteed by statute, not contract. He asks this court to reinstate the jury's verdict and remand for an award of attorney fees. Because Eimers' claims necessarily hinge on an "interpretation or application" of the contract language, we affirm the district court's order.

## I.    Background Facts and Proceedings

Matthew Eimers was a state trooper employed by the Iowa Department of Public Safety. A collective bargaining agreement between the department and the State Peace Officers Council, a public employee bargaining unit under Iowa Code chapter 20, governed the terms of his employment.

In January 2021, Eimers fell sick with COVID-19. According to Eimers, the illness exacerbated his atrial fibrillation—a heart condition that significantly interfered with his ability to work. When it became clear that he would not be returning to service, Eimers applied for accidental disability retirement through the Peace Officers' Retirement, Accident, and Disability System. Meanwhile, he also requested temporary incapacity benefits under Iowa Code section 80.6(4) (2021), which provides:

> Should a peace officer become incapacitated for duty as a natural and proximate result of an injury, disease, or exposure incurred or aggravated while in the actual performance of duty at some definite time or place, the peace officer shall, upon being found to be temporarily

2

incapacitated following an examination by a workers' compensation physician or other approved physician be entitled to receive the peace officer's fixed pay and allowances, without using the peace officer's sick leave, until reexamined by a workers' compensation physician or other approved physician or examined by the medical board provided for in section 97A.5, and found to be fully recovered or permanently disabled.

Although a physician had deemed Eimers unfit for duty in April 2021, the department declined to pay him temporary incapacity benefits, citing the denial of Eimers' separate claim for workers' compensation benefits by a claims administrator. So, to maintain his income while unable to work, Eimers primarily relied on his sizeable reserve of paid sick leave. He used almost a full year of accrued leave while waiting for a decision on his retirement application, exhausting banked hours he could have converted into post-retirement benefits.[1] There is no dispute, however, that Eimers continued to receive his regular pay during his period of incapacitation.

In April 2022, Eimers filed a wage collection lawsuit under Iowa Code chapter 91A, alleging that because he was being forced to use his "vested sick leave benefits or other vested leave benefits," the department was failing to pay him as required by section 80.6.[2] He also filed a mandamus action seeking to compel payment of his requested benefits and hasten a decision on his retirement application. A few months later, a state board approved

---

[1] Under the collective bargaining agreement, troopers could convert unused sick leave into credit toward health or life-insurance premiums upon retirement. Before depleting his reserve, Eimers' accrued sick leave was worth more than $70,000 in post-retirement insurance credit.

[2] Chapter 91A provides a private right of action by which an employee may sue their employer for wages owed but not timely paid. *See* Iowa Code § 91A.8. "Wages" for purposes of the statute include "[v]acation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer." *Id.* § 91A.2(7).

Eimers' application for accidental disability retirement, and the department restored his depleted sick leave. These developments mooted the mandamus case. *See Eimers v. Iowa Dep't of Pub. Safety*, No. 22-0798, 2023 WL 6292243, at *2 (Iowa Ct. App. Sept. 27, 2023) (dismissing Eimers' appeal from denial of mandamus).

Eimers, however, pressed on with his chapter 91A claim, arguing that the department failed to reimburse him for these four categories of wages and benefits:

**"Compensation for Labor or Services Rendered" (Callback Time).** Under the collective bargaining agreement, troopers are entitled to a minimum of two hours of compensatory time whenever they are "called back" to work during scheduled time off. Eimers argued that he was owed callback time for occasions during his period of incapacity when he was asked to perform work tasks—such as filling out his time sheets and completing online training. The department argued that the work Eimers completed did not qualify for callback time and that, in any event, he was paid his full wages for each day he was on leave.

**"Uncompensated Vacation Leave."** By statute, state employee vacation leave "shall not be cumulated to an amount in excess of twice the employee's annual rate of accrual." Iowa Code § 70A.1(2)(b). When he started his leave, Eimers had amassed close to his maximum vacation time. He reached the limit in April 2021, after which he stopped accruing additional vacation. According to Eimers, he should have been allowed to exceed this limit because he could not use his vacation time while incapacitated. The department argued that section 70A.1 prohibited Eimers from accruing additional hours.

4

**"Uncompensated Holiday Pay."** Because the State Patrol does not shut down for holidays, the collective bargaining agreement entitles troopers to compensatory time for eleven holidays per year. Under the agreement, these holiday hours "lapse if not used within the subsequent twelve (12) month period." Eimers argued that the department owed him for 136 hours of holiday time that he was unable to use while out sick. The department declined to compensate Eimers for this time as a matter of policy.

**"Uncompensated Sick Leave."** Finally, Eimers challenged the department's failure to credit him with twenty-seven hours of sick leave he used in January 2021, when he first became ill with COVID-19. The department agreed that it had not restored these hours. But it argued it was not required to do so, reasoning Eimers had "no idea where he got COVID" and so it was not a work-related illness.

\* \* \*

Eimers' claims proceeded to a jury trial in July 2024. The department moved for a directed verdict after Eimers rested and again at the close of all evidence. It argued that Eimers' claims for callback time, vacation time, and holiday pay were barred because each hinged on an interpretation of the collective bargaining agreement and Eimers had failed to follow the agreement's mandatory grievance procedure before filing suit. The court reserved ruling on the motion and agreed to instruct the jury on each of the four categories of wages Eimers claimed. The jury returned a verdict for Eimers, finding the department liable for $213.69 in callback time and $5,930.96 in holiday pay. It awarded Eimers nothing under the vacation and sick leave categories.

5

Following trial, the district court entered an order vacating the jury's verdict and dismissing Eimers' suit. Citing *Kleppe v. Fort Dodge Police Dep't*, No. 19-0652, 2020 WL 1548519, at *7 (Iowa Ct. App. Apr. 1, 2020), the court concluded that a chapter 91A claimant may not seek compensation "due under the terms of a collective bargaining agreement without first pursuing . . . remedies provided for under that agreement." Because Eimers did not file a grievance under the collective bargaining agreement, the court found the department was entitled to judgment as a matter of law.

Eimers appeals, arguing the district court erred in applying *Kleppe* and asking this court to reinstate the jury award for his uncompensated callback time and holiday pay.

## II. Standard of Review

We review the grant of a motion for directed verdict for the correction of errors at law. *Royal Indem. Co. v. Factory Mut. Ins.*, 786 N.W.2d 839, 849 (Iowa 2010).

## III. Analysis

Iowa Code chapter 20 governs collective bargaining between Iowa's public employers and their employees. For bargaining units comprised of at least thirty percent public safety employees, the statute requires negotiations over a variety of subjects, including "grievance procedures for resolving any questions" under a collective bargaining agreement. Iowa Code § 20.9(1). If an employee's dispute is covered by a negotiated grievance procedure, the employee generally must exhaust that procedure before seeking judicial relief. *See id.* § 20.18(2) (stating public employees "shall follow . . . the grievance procedures provided in a collective bargaining agreement"); *Steele v. State Dep't of Corr.*, 462 N.W.2d 299, 300 (Iowa Ct. App. 1990) (explaining

6

grievance procedures short of binding arbitration "must be followed before a civil action is allowed").

This rule is not unique to Iowa law. Several states require contract employees to exhaust their bargained-for remedies before turning to litigation. *See, e.g.*, *Warmbier v. City of New York*, 235 N.Y.S.3d 80, 82 (App. Div. 2025); *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 256 Cal. Rptr. 3d 139, 146–47 (Ct. App. 2019); *Luginbuhl v. City of Gallup*, 302 P.3d 751, 760 (N.M. Ct. App. 2013); *Edwards v. Cascade Cnty. Sheriff's Dep't*, 223 P.3d 893, 901 (Mont. 2009). As the Nebraska Supreme Court has observed, there are commonsense reasons for enforcing grievance procedures:

> First, the exhaustion requirement is important because it allows the [employer] . . . "to redress wrongs without burdening the courts with unnecessary litigation." Courts need not and should not be in the business of addressing internal issues within [an] organization before the decisionmaking process has had the opportunity to run its course and become final. . . .
>
> Related to the policy of conservation of judicial resources, the exhaustion requirement serves to build a record if later judicial proceedings do ensue and to clarify the parties' arguments and sharpen the focus on the relevant evidence. By attempting to resolve the issues internally, the scope of the dispute may be narrowed, making resolution easier for later judicial proceedings.
>
> Finally, failing to treat mandatory grievance procedures as a condition precedent would effectively make them optional. It would undermine an organization's ability to create by contract a single forum to resolve all of its internal disputes. And as one court reasoned, mandatory grievance procedures must be exhausted before seeking judicial review, because the grievance procedure "is part of the contractual bargain and defines the rights themselves."

*Armstrong v. Clarkson Coll.*, 901 N.W.2d 1, 28 (Neb. 2017) (footnotes omitted).

The collective bargaining agreement in this case features a mandatory grievance process. Its terms apply to any complaint involving an "alleged violation of a specific provision of the Agreement, or the interpretation or application of a term of this Agreement." Eimers concedes that he failed to follow the grievance process before bringing his wage-collection lawsuit. However, he argues the exhaustion requirement does not apply because his chapter 91A claims were "not for wages owed under the [collective bargaining agreement]" but rather "for wages owed under Iowa Code § 80.6(4)."

This court has addressed a similar argument before. In *Kleppe v. Fort Dodge Police Department*, a former Fort Dodge police officer brought an action under chapter 91A, alleging the City owed him overtime pay for hours he spent training his police dog. 2020 WL 1548519, at *1. Although the officer had filed a grievance under his collective bargaining agreement, he had declined to follow the grievance process to its end, and so the district court dismissed his suit. *Id.* at *1–2. On appeal, the officer argued that "his claim did not arise under the [collective bargaining agreement] but from a free-standing right" under chapter 91A. *Id.* at *3. We were unconvinced and found the officer's "wage claim is not enforceable without reference to the [collective bargaining agreement], which sets out what he may receive as compensation from the City." *Id.* at *4. Discerning no conflict between the exhaustion requirement in section 20.18(2) and the right of action provided by chapter 91A, we upheld dismissal. *Id.* at *6.

Eimers contends *Kleppe* is inapplicable because section 80.6 creates a payment obligation for the department that is "independent" of the collective bargaining agreement. He points to differences between the temporary incapacity benefits guaranteed by statute and the less-robust

disability rights provided in the contract, arguing "[t]here is nothing in the [collective bargaining agreement] that allows a trooper to be paid his full fixed pay and allowances while on leave." He also relies on *Hornby v. State*, 559 N.W.2d 23 (Iowa 1997), arguing that case recognized an exception to the exhaustion requirement for employees suing for benefits under chapter 91A.

The fact that Eimers claims a right to payment under section 80.6 fails to distinguish this case from *Kleppe*. Like chapter 91A, nothing in that statute spells out the substantive benefits a peace officer must receive while incapacitated. It states only that the officer is entitled to receive their "fixed pay and allowances" without expending sick leave. Iowa Code § 80.6(4). The burden was on Eimers to show what that means in his case. *See Crookham v. Structural Contractors, Ltd.*, 466 N.W.2d 277, 278 (Iowa Ct. App. 1990) (noting the burden rests on a chapter 91A plaintiff to prove an agreement or policy establishing the right to unpaid wages).

Both benefits at issue here are creatures of the collective bargaining agreement. The agreement lays out the bargained-for terms under which the department awards callback time and holiday pay. With respect to callback time, the agreement states that employees "who are off-duty and called back to work by the Employer shall be guaranteed a minimum of two (2) hours of work time or actual hours worked, whichever is greater." As for holiday time, the agreement separately provides that those hours may allowed only if the employee is "in pay status their last scheduled work day immediately before and their first scheduled work day immediately following each holiday." The parties take opposing views on how these terms apply in Eimers' situation. We need not weigh in. All that matters is that Eimers' claims for callback time and holiday pay hinge on the "interpretation or application" of the

9

collective bargaining agreement's language, and so they are subject to the mandatory grievance procedure.

*Hornby*, which did not involve a collective bargaining agreement, gets Eimers no further. The issue presented there was whether long-term disability benefits were "wages" under the statute. *Hornby*, 559 N.W.2d at 24–25. Answering in the affirmative, the supreme court noted that chapter 91A is a remedial statute that must be liberally construed in favor of wage recovery. *Id.* at 26. But it did not suggest chapter 91A claims enjoy a special exception from otherwise-applicable exhaustion rules. In contending otherwise, Eimers seems to conflate *Hornby*'s chapter 91A discussion with its separate holding that the employee's breach-of-contract claim was exempt from chapter 17A exhaustion requirements because it did not allege an "agency action." *See* 559 N.W.2d at 24–25. That administrative-law issue had nothing to do with section 20.18's mandate that public employees exhaust available contractual remedies before seeking judicial relief.

Eimers alternatively asserts the collective bargaining agreement "is probably illegal because it contradicts Iowa Code § 80.6(4)." It's true that "a public employee is not obligated to grieve the application of a collective bargaining term that is facially invalid because it is inconsistent with an Iowa statute." *Moore v. Davenport Civ. Serv. Comm'n*, 790 N.W.2d 809, 817 (Iowa Ct. App. 2010); *accord Stammeyer v. Div. of Narcotics Enf't*, 721 N.W.2d 541, 546–47 (Iowa 2006) (suggesting the grievance requirement must yield where the employee asserts an inconsistent statutory right of action). But Eimers never challenged the validity of the collective bargaining agreement during the district court proceedings, and so his argument is not preserved for appellate review. *See Bill Grunder's Sons Constr., Inc. v. Ganzer*, 686 N.W.2d 193, 197 (Iowa 2004) ("Based upon considerations of fairness, this

10

court is not ordinarily a clearinghouse for claims which were not raised in the district court." (cleaned up)).[3]

At bottom, none of the arguments Eimers has preserved for this court's review support a departure from the reasoning in *Kleppe*. Just like the police officer in that case, he "cannot escape the fact the [collective bargaining agreement] delineated the wages" he claims to be owed. *Kleppe*, 2020 WL 1548519, at *3. Eimers' own attorney put it best when resisting the department's motion to exclude the collective bargaining agreement from evidence at trial: "We've got to go somewhere for a definition of what the wages and benefits are that were to be paid, and that's in the collective bargaining agreement."

Because the collective bargaining agreement required Eimers to seek a resolution from the department before filing suit, his claim under chapter 91A is barred. *See* Iowa Code § 20.18(2); *Steele*, 462 N.W.2d at 300. We affirm the district court's order granting the department's motion for directed verdict.

**AFFIRMED.**

---

[3] We likewise disregard the alternative theories raised for the first time in Eimers' reply. Among other things, Eimers contends that a grievance would have been futile because the department would have denied his request. But "[i]ssues may not be asserted for the first time in the reply brief." Iowa R. App. P. 6.903(4). And, in any event, "it is not an excuse that the decision makers would have denied the remedy requested if the grievance procedures had been followed." *Hartunian v. Kirkwood Cmty. Coll.*, No. 12–0440, 2012 WL 6193870, at *5 (Iowa Ct. App. Dec. 12, 2012).